UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ROBERT A. LOEFFLER, JOSEPHINE LOEFFLER,
ROBERT C. LOEFFLER, KRISTY LOEFFLER,

       Plaintiffs,

     -against-

STATEN ISLAND UNIVERSITY HOSPITAL,

       Defendant.

-------------------------------------------------------------------X

Docket No.:  95 CV 4549 (SJ)


**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT UPON THE PASSAGE OF THE "RESTORATION ACT"
<u>AMENDING THE NEW YORK CITY HUMAN RIGHTS LAW</u>**


Alan J. Rich, Esq.
LAW OFFICES OF ALAN J. RICH, LLC
250 West 57th Street, Suite 1619
New York, New York  10107
Tel:  212-921-2244
ARich@richlaw.US

**TABLE OF CONTENTS**

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.  THE "RESTORATION ACT" IS A COMPASS TO RESTORE THE
ORIGINAL MANDATE OF LIBERAL AND INDEPENDENT
CONSTRUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.  Original 1991 City Human Rights Law Required Liberal
      and Independent Construction in View of Narrowing Court
      Interpretations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.  Restoration Act Reinforces Obligation
      to Construe NYCHRL Liberally. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      C.  Loeffler Children Covered by the "Association or
      Relationship" Prohibition. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      D.  Restoration Act Further Supports Plaintiff Children's
      Relationship Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      E.  Liberal Construction Even Prior to the 1991 Amendment. . . . . . . . . . . . . . . . . . . 8

      F.  The "Deliberate Indifference" Standard Is
      Inconsistent with the NYCHRL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      G.  Plaintiffs, Including Loeffler Children, Are Already "Prevailing
      Parties" Under Catalyst Theory. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

II.  THE MOTION TO DISMISS THE LOEFFLER CHILDREN'S
ASSOCIATIONAL CLAIMS UNDER STATE HUMAN RIGHTS LAW
SHOULD BE DENIED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      A.  Liberal Construction Mandate Permits Associational
      Discrimination Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

**CASES**

Abdel-Khalek v. Ernst & Young, LLP., 1999 WL 190790. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Axelrod v. 400 Owners Corp., 189 Misc. 2d 461, 465-466 (Sup.Ct. N.Y.Cty. 2001). . . . . . . . . 14

Bartman v. Shenker, 5 Misc. 3d 856 (N.Y.Cty. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Barton v. New York City Comm. On Human Rights,
140 Misc.2d 554, 561 (N.Y.Cty. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Bernstein v. 1995 Assocs., 185 A.D. 2d 160 (1st Dep't 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Buckhannon Bd. & Care Home v. W. Va. Dep't of Health
& Human Res., 532 U.S. 598 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Carter v. Orleans Parish Public Schools, 727 F.2d 261, 264 (5th Cir. 1984) . . . . . . . . . . . . . . . 10

Delano-Pyle v. County of Victoria, 302 F.3d 567, 575 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . 10

Dunn v. Fishbein, 123 A.D.2d 659, 660 (2d Dep't 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Innovative Health Sys. v. City of White Plains, 117 F.3d 37, 47 (2d Cir. 1997) . . . . . . . . . 14, 15

Innovative Health Sys. v. City of White Plains, 931 F. Supp. 222, 237 (S.D.N.Y. 1996) . . . . . 15

Randolph v. Rodgers, 170 F.3d 850, 858 (8th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Tugg v. Towey, 864 F.Supp. 1201, 1208 (S.D.Fl., Miami Div. 1994). . . . . . . . . . . . . . . . . . . . . 14

**FEDERAL REGULATIONS & STATUTES**

29 U.S.C. §794, Rehabilitation Act, §504. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9, 10, 14

**STATE AND CITY LAWS**

Local Laws of the City of New York for the Year 2005, No. 85
(Local Civil Rights Restoration Act).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1-4, 6, 8, 9, 11-13, 15

New York City Human Rights Law (NYCHRL). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .throughout

New York State Human Rights Law (NYSHRL), NY Exec. L.§ 300 . . . . . . . . . . . . . .1, 9, 13-15


**OTHER SOURCES**

Letter of the Bar Association of the City of New York (2005). . . . . . . . . . . . . . . . . . . . . . . . . . 3

New York City Council Report, 1991. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

New York City Council Report, 2005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

Remarks of Mayor David N. Dinkins, June 18, 1991.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 11

<u>A Return to Eye on the Prize: Litigating Under the Restored
New York City Human Rights Law</u>, 33 Fordham Urb.L.J. 255, 262 (2006).. . . . . . . . . . .2, 4, 12

Statement of the Brennan Center for Justice in Support of Local
Civil Rights Restoration Act, July 8, 2005.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2, 3

Pattern Jury Instruction (NY) PJI 9:3 (disability instruction) . . . . . . . . . . . . . . . . . . . . . . . . . . .9

Testimony of Craig Gurian, Anti-Discrimination Center
of Metro New York (2005) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

**INTRODUCTION**

i

On October 3, 2005, after defendant moved for summary judgment, the City of New York passed the "Local Civil Rights Restoration Act" (hereinafter "Restoration Act."), amending the New York City Human Rights Law ("NYCHRL"). *See*, Local Laws of the City of New York for the Year 2005, No. 85, amending the Admin. Code in relation to the New York City Human Rights Law ("NYCHRL") attached hereto at Exhibit T.

This law mandates the independent and liberal construction of the NYCHRL. The "liberal construction" requirements of the Restoration Act also require a rejection of the "deliberate indifference" standard of proof. The standard of proof is not contained in the NYCHRL. Accordingly, the law is subject to construction and interpretation.

The statute itself offers guidance that it should not be an "intent based" standard. At worst, as in other federal jurisdictions, the standard should be whether the defendant acted "intentionally," such as in the Fifth Circuit, where this lower standard for similar civil rights causes of action is used, such as under § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), ("RA").

While the Restoration Act compels courts to interpret the City's Human Rights Law liberally, it should also remind courts to be wary of strict interpretations of the New York State Human Rights Law ("NYSHRL"). The NYSHRL has a similar "liberal construction" requirement that some courts have chosen to avoid or overlook. Accordingly, we examine how the Restoration Act also informs and enlightens this discussion about association claims under the NYSHRL.

I.  **THE "RESTORATION ACT" IS A COMPASS TO RESTORE THE ORIGINAL MANDATE OF LIBERAL AND INDEPENDENT CONSTRUCTION**

The Restoration Act is unique in that it instructs courts that they have routinely failed to follow the original mandate of the 1991 amendment to the New York City Human Rights Law, requiring that this law be construed both liberally, and independently of similar federal and state laws.  The letter and intent of this 2005 law is to "restore" the NYCHRL to its intended 1991 purpose.  The Act's application is not merely corrective, but retroactively so, advising courts of their original failures to chart a course for the City law independent of state and federal civil rights laws and the judicial interpretations regarding them.

In passing this Restoration Act, the present City Counsel and Mayor explicitly intended to end the "rote parallelism" whereby courts have routinely and erroneously applied constructions of similar federal and state civil rights laws to the NYCHRL.  *See*, A Return to Eye on the Prize: Litigating Under the Restored New York City Human Rights Law, 33 Fordham Urb.L.J. 255, 262 (2006), attached hereto at Exhibit. U.  This article provides unique insight, since its author, Craig Gurian, drafted the 2005 Restoration Act as well as the original 1991 legislation.

The problem of passing laws that would exclusively correct specific substantive interpretations of the law, was addressed by the Brennan Center for Justice[1]. The Center's position statement opined that without further clarification of the "independent construction requirement New York City protections will continue to erode."  *See* "Statement of the Brennan Center for Justice in Support of Local Civil Rights Restoration Act," July 8, 2005, p. 3, annexed hereto at Exhibit Z.

---

[1] The Brennan Center describes its mission as, "unit[ing] thinkers and advocates in pursuit of a vision of inclusive and effective democracy.  Our mission is to develop and implement an innovative, nonpartisan agenda of scholarship, public education, and legal action that promotes equality and human dignity, while safeguarding fundamental freedoms."  See generally www.brennancenter.org.

While the law does focus on certain specific departures or changes that it wishes redressed or clarified, such as the right to attorneys fees in "catalyst" cases, *see infra,* the Brennan Center opined that merely changing specific sections of the City law, addressing each substantive issue separately, has proven ineffective. *Id.* 5-7.

Because the Restoration Act largely compels courts of the need to revisit the original language and intent of the 1991 amendment to the NYCHRL, we also attach hereto the following regarding the 1991 and 2005 legislative histories:

>  Exhibit W: Testimony of Craig Gurian, Anti-Discrimination Center of Metro NY, 2005
> Exhibit X: New York City Council Report, 2005
> Exhibit Y: New York City Council Report, 1991
> Exhibit AA: Letter of the Bar Association of the City of New York, 2005

**A.    Original 1991 City Human Rights Law Required Liberal and Independent Construction In View of Narrowing Court Interpretations**

At a public hearing regarding the 1991 legislation, then New York City Mayor David Dinkins stated, "[a]s the committee report that accompanies this bill makes clear, it is the intention of the Council that judges interpreting the City's Human Rights Law are not to be bound by restrictive state and federal rulings and are to take seriously the requirement that this law be liberally and independently construed." Remarks of Mayor David N. Dinkins, June 18, 1991, attached hereto at Exhibit V, p. 2.

Yet in case after case, the New York City Human Rights Law has been explicitly interpreted in light of principals of strict construction and following interpretations which have routinely narrowed the protections of similar federal and state protections. *See gen'ly*, A Return to Eye on the Prize, *supra*, 33 Fordham Urb.L.J. 255, *et seq*.

B.  **Restoration Act Reinforces Obligation to Construe NYCHRL Liberally**

The NYCHRL as amended in 1991 stated:

> The provisions of this chapter shall be construed liberally for the accomplishment of the purposes thereof."
> NYCHRL § 8-130.

Because courts regularly failed to follow this interpretation, the Restoration Act of 2005, amended the NYCHRL as follows:

> The provisions of this [chapter] *title* shall be construed liberally for the accomplishment of the *uniquely broad and remedial* purposes thereof, *regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed.*
> NYCHRL § 8-130 [amended language in italics], *see* Exhibit T.

One enunciated "purpose" of this law has been to "eliminate and prevent discrimination from playing any role in actions relating to...public accommodations..." NYCHRL § 8-101. "Reasonable accommodations" are explicitly mandated pursuant to NYCHRL § 8-102 (18), as is non-discrimination based on association of relationship. NYCHRL § 8-107(4) (a). Affording relief to the Loeffler children furthers the purpose that reasonable accommodations be provided in public accommodations.

C.  **Loeffler Children Covered By the "Association or Relationship" Prohibition**

The Loeffler children were denied the "advantages, facilities and privileges" that would be accorded the ordinary children of a non-disabled parent in the hospital. Because of their status, the hospital denied them their right to be treated as ordinary infant children related to a hospital patient. They could not go and come as they please. On the contrary, they were either "on the job" as interpreters or "on call." For example, Bobby was compelled to interpret life and death medical

5

information for his father prior the surgery, to *be a witness in post-op of his father's stroke* and stand in the shoes of medical personnel to alert the defendant hospital that something drastically dangerous had just occurred – his father's stroke. After seeing the devastating effect on Bobby, the hospital *still did not provide an interpreter* but enlisted daughter Kristy to interpret for her mother and paralyzed father – and even went so far as *giving her a beeper to be on constant standby calling her from school* to interpret for her parents during this two week ordeal.

Defendant does not dispute that the denial of sign language interpreters violated the obligation to provide reasonable accommodations under the NYCHRL § 8-107(4) (a), which mandates that:

> It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of the actual or perceived...disability...of any person directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof, or, directly or indirectly...to the effect that any of the accommodations, advantages, facilities and privileges of any such place or provider shall be refused, withheld from or denied to any person on account of disability...
> NYCHRL § 8-107(4) (a)

NYCHRL § 8-107(20), relating to coverage based on "relationship or association" provides, "[t]he provisions of this section set forth as unlawful discriminatory practices shall be construed to prohibit such discrimination against a person because of the actual or perceived...**disability...of a person with whom such person has a known relationship or association."** [emphasis supplied]

SIUH compelled the Loeffler children, then only 13 and 17 years old, to interpret for their deaf parents *exclusively* **because of their relationship and association to their disabled parents.** The hospital specifically and shamefully took advantage of that relationship knowing that these

children would have no choice but to jump into the breach. The alternative for these children would be to leave their parents entirely in the dark – without ability to communicate about life and death issues, such as whether to continue life support, the consequences of alternative courses of treatment and the mortality rates of differing options. Moreover, defendant SIUH did so despite repeated and ongoing requests for interpreters.

Moreover, these horrors only stopped some two weeks after the surgery, when plaintiffs' counsel obtained an Order to Show Cause and defendant provided all the legally mandated services.

### D.      Restoration Act Further Supports Plaintiff Children's Relationship Claims

While even under strict construction, the Loeffler children qualify based on their "relationship or association," as discussed in Plaintiffs' Memorandum in Opposition, this case is even more compelling after the passage of the Restoration Act. This amendment sounds the alarm to remind courts that this law is to be construed liberally for the "uniquely broad and remedial purposes thereof..."

One *purpose* of the NYCHRL is to protect those who are injured by such deprivations in public accommodations, "directly or indirectly" (NYCHRL § 8-107 (4) (a)), as well as those with whom they are "associated or related." Under the liberal construction mandate alone, even without the "relationship" provision, the Loeffler children would be properly accorded rights. While the interpreters were directly for the benefit of their parents, the failure to provide their parents interpreters, indirectly caused the Loeffler children great injury, as was evidenced by the serious psychological damages documented by Susan Kolod, Ph.D. *See* Exhibit O and Exhibit P.

7

The very reason that the disability rights movement sought the legal requirement of "reasonable accommodations," was to provide independence to those with disabilities and a sense of normalcy. If a person had a ramp to get into a building, they did not need to rely on a family member to help them on a daily basis. The "reasonable accommodations" laws removed this constant reliance on family for these otherwise necessary tasks.

In the case of children whose parents have disabilities, when public accommodations violate the law, they compel those closest to the disabled person to step into the breach. Every time a hospital refuses to provide an interpreter, the family member, such as the hearing child of a deaf adult, is forced into this improper role. The child has to miss school, is compelled to interpret information, even if because of tender years or lack of skill he/she doesn't understand it, or even if the information is privileged or sensitive, such as was the medical information in this case. This is precisely the kind of injury and practice that this law intended to remedy.

Accordingly, defense counsel misses the point in arguing that the Loeffler children do not have a cause of action because they are not the only, or most direct beneficiary, of the interpreting services. Def. Mem., 8-10.

Not only does defendant fail to account for the "relationship or association" provision, but it also fails to account for the "directly or indirectly" provision, requiring reasonable accommodations in public accommodations. If the Loeffler children were not directly the target of the deprivation, they were certainly "indirectly" deprived of a service *from which they benefitted.*

Clearly, under a liberal construction required as expressed in the Restoration Act, in view of the purpose of the statute to prevent and eliminate discrimination, the defendant's acts here violated the rights of the plaintiffs. To fail to allow such a cause of action, from the perspective of

8

those based on relationship or association, *would wrongly compel the family member to be responsible to provide the "reasonable accommodation" rather than the covered entity itself.*

### E.     Liberal Construction Even Prior to the 1991 Amendment

The NYCHRL amendment explicitly providing for coverage of persons based on "relationship or association," was introduced in the 1991 amendment. Notwithstanding, even prior to that, such a cause of action was recognized. One court sustained a cause of action by a dentist subletting professional office space against a landlord alleging that his lease was being terminated because he treated AIDS patients. The Court merely needed to determine that in some way the protected class, people with AIDS, were covered, and where there was an injury to the dentist, albeit indirect, he had the right to a cause of action. Barton v. New York City Comm. On Human Rights, 140 Misc.2d 554, 561 (Sup. Ct., N.Y. Cty. 1988). Though defendant cited to this case (Def. Mem., 11), it failed to even note that this broad construction predated the explicit "relationship or association" language *introduced by way of the 1991 amendment.*

### F.     The "Deliberate Indifference" Standard Is Inconsistent with the NYCHRL

The Restoration Act ushers in a time to reexamine the NYCHRL in view of its intrinsic language, legislative history and liberal and independent construction mandate. Accordingly, it would be error to first look to interpretations of federal and state statutes which have been artificially grafted onto the NYCHRL. Largely by habit, the interpretations of the NYCHRL have borrowed from interpretations of federal statutes and state statutes. Similarly, courts have often interpreted the NYSHRL in light of decisions under federal laws, sometimes without regard to distinctions in

the law, simply because of the paucity of the number of state law cases and the sheer volume of federal civil rights cases.

The text of the NYCHRL is inconsistent with the "deliberate indifference" standard. Rather, this statute's language mirrors that of the "disparate impact" discrimination theory, which does not depend at all on *intent,* but on the *effect.*

For example, the NYCHRL prohibits the refusal or denial of the accommodations **"directly or indirectly...to the effect that** any of the accommodations, advantages, facilities and privileges of any such place or provider shall be refused, withheld from or denied to any person on account of disability..." NYCHRL § 8-107 (4) (a). **[emphasis supplied]**

Similarly, the New York's Pattern Jury Instruction for disability discrimination in employment under the New York State Human Rights Law, merely requires that the jury determine whether the plaintiff with the disability was able to "reasonably perfor[m] the activities involved in (his, her) job." PJI 9:3. There is no inquiry by the jury as to the intent of the defendant employer.

Similarly, employment discrimination cases based on disability do not require a finding of intent. To state a prima facie claim under the Rehabilitation Act, a plaintiff must show: 1) he/she is a person with a disability; 2) he/she is otherwise qualified for the benefit in question; 3) he/she was excluded from the benefit due to discrimination based upon the disability; and 4) the program or activity from which he/she is excluded receives federal financial assistance. *See e.g.,* Randolph v. Rodgers, 170 F.3d 850, 858 (8th Cir. 1999).

Accordingly, this Court should reject the "deliberate indifference" standard urged by defendant, notwithstanding the Second Circuit's use of this standard in federal Rehabilitation Act cases. Def. Mem. Sup. at 15.

There are largely two alternatives to the "deliberate indifference" standard. First, a standard that does not require intent at all, such as in disparate impact cases or as in disability employment cases. *See, supra.* Second, this Court may adopt a lesser "intentional" act standard.

"Intent" rather than "deliberate indifference" is a standard recognized amongst federal Circuits in similar "reasonable accommodations cases. *See, e.g.* Delano-Pyle v. County of Victoria, 302 F.3d 567, 575 (5th Cir. 2002), Carter v. Orleans Parish Public Schools, 725 F.2d 261, 264 (5th Cir. 1984).

In Pyle, *supra,* a unanimous bench in the 5th Circuit (a Circuit most known for conservative opinions), upheld the standard that plaintiff merely need show that the discriminatory act was "intentional." In that case, a deaf motorist was wrongly accused of driving while intoxicated, arrested and jailed. The deputy administered a variety of field sobriety tests to which the motorist could not respond effectively because he could not hear the commands. He also did not understand his rights by the methods he was told.

Evidence adduced at trial, showed that the deputy was speaking quickly, that he "knew [plaintiff] had a hearing problem," and when the Deputy was asked at trial if he believed his communication with the plaintiff was "effective," even the Deputy responded, "somewhat, but no." *Id.* at 575-576.

The Fifth Circuit upheld the "intentional" act standard, approving the trial Court's jury instruction, requiring the finding that, "[f]irst:  That [plaintiff] was either 1)  excluded from participation in or denied the benefits of services, programs, or activities of [Victoria County], or 2)  was subjected to discrimination by Victoria County. Second: That Victoria County's conduct was intentional." *Id.* at 574.

11

Whether defendant acted "intentionally," rather than with "deliberate indifference," is a standard closer to the liberal construction requirements of the NYCHRL than "deliberate indifference." Even prior to the Restoration Act, back in 1991, Mayor Dinkins stated that **"...this bill gives us a human rights law that is the most progressive in the nation**...[s]ince 1980, the federal government has been steadily marching backward on civil rights issues." <u>Dinkins' Remarks</u>, *supra*, Exhibit V, p. 1.

Whichever of the above standards this Court adopts, it is unimaginable that in 1991 and again in 2005, the New York City Counsel and two mayors, wanted this great city's civil rights laws to have a standard offering less protection than the Fifth Circuit affords in similar federal civil rights cases.

### G. Plaintiffs, Including Loeffler Children, Are Already "Prevailing Parties" Under Catalyst Theory

Under the NYCHRL, as explicitly delineated in the Restoration Act, the Loeffler children are *already* "prevailing parties" because SIUH conceded to the terms of the Stipulation (Pl. Ex. K), providing all the relief requested in the Order to Show Cause and supporting Memorandum of Law (Pl. Ex. I and J).

In 1991, a party bringing suit under federal civil rights statutes, could seek attorneys fees as a prevailing party, where the law suit was the "catalyst" for the change sought by the action. Upon entry of a stipulation of settlement, typically attorneys fees could be sought. The intent was to ensure that attorneys could afford to prosecute such cases and would not lose their right to fees and costs simply because they achieved the desired result for their aggrieved client without resort to a

trial. *See*, A Return to Eye on the Prize: Litigating Under the Restored New York City Human Rights Law, 33 Fordham Urb.L.J. 255, 323 (2006).

Yet conservative and restrictive trends in federal case law, reversed this practice. In 2001, the U.S. Supreme Court overruled the "catalyst theory," notwithstanding the dissent of four Justices. *See,* Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, *dissent at* 622 (2001).

To prevent a similar interpretation of the NYCHRL, the Restoration Act provided, "[i]n any civil action commenced pursuant to this section, the court, in its discretion, may award the prevailing party costs and reasonable attorney's fees. For the purposes of this subdivision, the term "prevailing" includes a plaintiff whose commencement of litigation has acted as a catalyst to effect policy change on the part of the defendant, regardless of whether that change has been implemented voluntarily, as a result of a settlement or as a result of a judgment in such plaintiff's favor." NYCHRL § 8-502 (f).

Accordingly, relief was sought on behalf of the Loeffler parents and children. Bobby Loeffler, then 13 years old, provided an affidavit in support of the injunctive relief sought so that he and his sister would not have to interpret for their parents. By stipulation, defendant consented to all such relief. These four plaintiffs are already prevailing parties.

**II.    THE MOTION TO DISMISS THE LOEFFLER CHILDREN'S ASSOCIATIONAL CLAIMS UNDER STATE HUMAN RIGHTS LAW SHOULD BE DENIED**

The Restoration Act to the NYCHRL should reawaken us to restore the New York State Human Rights Law to its original mandate.

The NYSHRL § 300, governing construction of that statute provides:

13

> The provisions of this article shall be construed liberally for the accomplishment of the purposes thereof.

NY Exec. § 300

The "purposes" of the NYSHRL are defined in NY Exec. § 290:

> 3. The legislature hereby finds and declares that the state has the responsibility to act **to assure that every individual within this state is afforded an equal opportunity to enjoy a full and productive life** and that the failure to provide such equal opportunity, whether because of discrimination, prejudice, intolerance or inadequate education, training, housing or health care not only threatens the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state and threatens the peace, order, health, safety and general welfare of the state and its inhabitants...to eliminate and prevent discrimination in...places of public accommodation....[emphasis supplied]

The language of the policy declaration is to assure that "every individual" is afforded an equal opportunity to enjoy a full and productive life. It is not limited to people with disabilities. Undoubtedly, Bobby and Kristy Loeffler, were not afforded an equal opportunity to enjoy a full and productive life when the hospital tethered these children for two weeks for their convenience, to interpret between their medical personnel and the Loeffler parents.

### A.     Liberal Construction Mandate Permits Associational Discrimination Claims

State appellate courts have long ago established precedents for an associational cause of action. Two decades ago, the Second Department endorsed a claim for associational discrimination under the NYSHRL, based on Exec. L. § 300, where there was causation and injury resulting from the prohibited discrimination. In Dunn v. Fishbein, 123 A.D.2d 659, 660 (2d Dep't 1986), the Court permitted a Caucasian person to maintain a claim that he was denied an apartment because his *roommate* was African-American.

14

Similarly, in <u>Bernstein v. 1995 Assocs.</u>, 185 A.D.2d 160 (1st Dep't 1992), the Court sustained a complaint by a physician who alleged that a landlord refused to renew his office lease because, among other things, he was treating AIDS patients and other persons protected by law from discrimination.

A person has the right to a cause of action, where he himself is not a member of the protected class but where he is personally affected as a result of prohibited discrimination, albeit indirectly. <u>Axelrod v. 400 Owners Corp.</u>, 189 Misc. 2d 461, 465-466 (Sup. Ct, N.Y. Cty. 2001).

Such an application of the statute based on liberal construction is natural. Federal laws such as § 504 of the Rehabilitation Act, are not grounded in statutory right, but rather in court interpretation and guidance from subsequent laws such as the ADA. <u>Tugg v. Towey</u>, 864 F. Supp. 1201, 1208 (S.D.Fl., Miami Div. 1994), in which the Court granted an injunction to deaf individuals *and their family members* for provision of sign language interpreters in mental health counseling pursuant to the Rehabilitation Act and ADA). *See also*, <u>Innovative Health Sys. v. City of White Plains</u>, 117 F.3d 37, 47 (2d Cir. 1997); <u>Innovative Health Sys. v. City of White Plains</u>, 931 F. Supp. 222, 237 (S.D.N.Y. 1996)

In support of its claims that the Loeffler children have no remedy under the NYSHRL, defense counsel cites to two trial court cases, one of which cites to the other. Defendant cites <u>Abdel-Khalek v. Ernst & Young, LLP.</u>, 1999 WL 190790 (<u>Def. Mem. Sup.</u>, 7-8), which granted summary judgment on an associational claim because, "the plain language of the New York State Human Rights Law clearly indicates that it only prohibits discrimination against individuals who are themselves disabled. . . [T]he statute does not contain a definition of discrimination that explicitly

15

encompasses disability association discrimination...." Defendant also cites Bartman v. Shenker, 5 Misc. 3d 856 (N.Y. Cty. 2004), which, in turn cite to Abdel-Khalek, reciting the above language.

The Abdel-Khalek Court ran roughshod over the "liberal" construction mandate of NY Exec. § 300, as well as over precedent in New York State appellate jurisprudence.

The New York State legislature enacted the NYSHRL with a mandate for "liberal construction." That means that it should be viewed toward the ends and purposes for which it was enacted and grow with a greater understanding of the substantive area. Federal and City laws explicitly and/or by construction recognize the right to claims based on association and relationship.

Though the Restoration Act is intended to awaken Courts to restore the liberal and independent interpretation intended for the NYCHRL, it should also serve to awaken courts that where there has been a consistent dismissal of the NYSHRL's statutory requirement that it too "shall be construed liberally for the accomplishment of the purposes thereof." NY Exec. § 300.

Accordingly, the motion to dismiss the associational claims of the Loeffler children under the NYSHRL, should be denied.

## **CONCLUSION**

For the above reasons, defendant's motion for summary judgment should be denied in its entirety.



/s/
Alan J. Rich